## In re SMITH et al.

(District Court, E. D. New York. March 22, 1911.)

BANKRUPTCY (§ 136*)—CONCEALMENT OF ASSETS—CONTEMPT.

Where a bankrupt concealed and recklessly disposed of partnership assets immediately preceding bankruptcy, under circumstances indicating an intention to interfere with the rights of creditors, and by various transactions practically gave away the firm's property or allowed it to be transferred after he knew that the creditors were entitled to have it kept intact, and when ordered to account for the property which he had disposed of failed to appear, and did not make a frank explanation of his transactions, he was punishable as for contempt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In the matter of the bankruptcy proceedings against Edward H. Smith and Smith M. Durland, trading as E. H. Smith & Co. On referee's report in proceedings to punish the respondent Smith for contempt. Sustained.

Clarence McMillan, for trustee.
Dana Wallace, for bankrupts.

CHATFIELD, District Judge. It has been held that the bankrupt Durland, while responsible financially for the transactions of the firm of which he was a member, was not shown to have been knowingly a party to the concealment of assets or disregard of the court's orders. On the other hand, the bankrupt Smith was shown by the testimony to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

have knowingly disposed of or concealed property after the petition in bankruptcy was filed, and after he had knowledge of that filing. Further than this, he was shown to have squandered or recklessly disposed of partnership assets immediately preceding bankruptcy, under such circumstances that his conduct indicated an intention to interfere with his creditors' rights, and hence that he had transferred property with intent to hinder, delay, and defraud creditors. He was ordered to account for the property which he had disposed of, and as to which his explanations had been so unsatisfactory that fraud must have existed, if he knew what he was doing and was to be held accountable for his actions.

Upon the reference to a special master, to allow him to explain these various transactions, he being nominally in contempt of the court's order ordering him to turn over or account for these properties, he has shown principally a course of dissipation, including a robbery and several hours' incarceration in a police station, in a state of total unconsciousness from drink, thus seeking to substantiate his story that he did not know what he had done with cash received and property on hand up to the time of this dissipation. The newspaper clipping used to prove his story shows, however, that the police took into their possession some $170 in cash, and a gold watch and chain, found upon the person of the alleged thief. As the amount originally supposed to have been lost was but $200, the story of this theft does not satisfactorily explain what became of the money, or why it did not get back into the hands of Smith after its deposit in the police court. The special master has reported that Smith has failed to appear, has not testified satisfactorily, and is plainly in contempt of the court.

A finding of contempt of this sort throws no light upon the ability of Smith to have complied with the order directing him to turn over property. The circumstances of the entire case show how a man of intemperate habits might have plunged his business into financial difficulties and retained no property which could be used for the payment of its debts, and yet have thrown that property away or disposed of it to his friends, under circumstances which did not indicate that he was intending to evade his creditors' claims, or the process of the court, if an attempt was made to seize the property. A frank explanation of these transactions would make it impossible to punish such a man for contempt, because of his inability to reobtain the squandered property to turn it over under the order of the court.

If Smith had shown, as apparently his partner, Durland, did show, an inclination to admit his responsibilities and to give convincing statements of what he had done, he might easily satisfy the court that his failure to comply with the order of the court was because of inability to do so. But the various transactions in which he practically gave away the firm's property, or allowed it to be transferred, after he knew that the creditors were entitled to have it kept intact, and his continued indifference, as shown by the certificate of the referee, make it necessary to find that the charge of contempt should stand, and that he should be brought before the court for such punishment as may be inflicted.